UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CHRISTINA L. EDENFIELD,

    Plaintiff,

vs.

SAMPSON TREE SERVICE CO.,
a Florida Corporation,
RICHARD A. SAMPSON, individually,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Christina Edenfield ("Plaintiff" or "Edenfield"), on her own behalf and on behalf of all those similarly situated, sues Defendants, Sampson Tree Service Co. ("Sampson"), a Florida Corporation, and Richard A. Sampson, individually ("Mr. Sampson") (Sampson and Mr. Sampson are hereinafter collectively referred to as "Defendants") and states:

## GENERAL ALLEGATIONS

1. This is an action to recover monetary damages in the form of unpaid overtime compensation and to redress the deprivation of rights secured to Edenfield and other employees similarly situated by the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA").

## JURISDICTION

2. This Court has jurisdiction over the FLSA-related controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and 28 U.S.C. § 1367 for supplemental jurisdiction as to the claim for wages which is substantially related to the claims under the FLSA.

3. Corporate Defendant, Sampson, is a tree service business specializing in, among other things, removal and disposal.

4. Sampson is and was an enterprise engaged in commerce as defined in the FLSA.

1

5. Mr. Sampson regularly owned and operated a business (i.e., Sampson) engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s) and otherwise used products built outside of Florida with parts from outside Florida which Sampson obtained from outside of Florida sufficient to establish subject matter jurisdiction.

6. During the relevant time period, the Edenfield worked for Defendants.

7. Defendants are liable for amounts owed to Edenfield for the period in which she was employed by them.

8. Mr. Sampson, individually, through his involvement with Sampson:

   A. was a principal and an owner of Sampson;

   B. was involved in, and ran the day-to-day operations of, Sampson;

   C. set the terms and conditions of employment of the employees of Sampson, including, but not limited to Edenfield; and

   D. was acting directly or indirectly in the interest of an employer in relation to Edenfield,

so as to make Mr. Sampson individually liable as an employer within the meaning of the Fair Labor Standards Act ("FLSA").

9. The Edenfield's work at Sampson involved handling or otherwise working on "goods" or "materials," as defined by the FLSA, that were used commercially in Sampson and Mr. Sampson's business, and moved in interstate commerce.

10. The work performed by Edenfield was directly essential to the business performed by Sampson and Mr. Sampson.

11. During the relevant time period, Sampson had an annual gross volume of sales made or business done of not less than $500,000.00.

12. Defendants are subject to the personal jurisdiction of this Court because they operate, conduct, engage in, and/or carry on business in the Southern District of Florida, the corporate office and business are located there and the individual Defendants reside there.

13. Defendants are also subject to the personal jurisdiction of this Court because they engage in substantial and not isolated activity within the Southern District of Florida.

**VENUE**

14. This Court is the appropriate venue as to Defendants based upon the following:

    A. The unlawful employment practices alleged herein occurred and/or were committed in the Southern District of Florida and,

    B. Defendants were and continue to be a company and individuals doing business within the Southern District of Florida.

**PARTIES**

15. Edenfield was and continues to be a resident of St. Lucie County, Florida

16. Edenfield worked for Defendants from approximately August, 2012 through approximately June 10, 2016.

17. Edenfield was an "employee" of Defendants within the meaning of the FLSA during her employment with Defendants.

18. Defendants were the employers of Edenfield within the meaning of the FLSA during her employment.

19. Defendants knowingly and willfully failed to pay Edenfield, and other employees similarly situated, her and their lawfully earned wages, including, but not limited to, overtime compensation in conformance with the FLSA.

20. Edenfield and other employees at Sampson, similarly situated, engaged in non-exempt duties and were not lawfully paid their earned wages and overtime compensation in violation of the FLSA, including but not limited to when they worked off the clock.

21. Some of the employees of Sampson are believed to be joint employees of Traditional Lawn & Landscaping Co., LLC, an entity owned, controlled and utilized by Sampson to funnel employee benefits to management employees, so as to not to have to incur the expense of providing those benefits to the other employees of Sampson.

22. Other employees of Sampson are provided by and through Barnett Management, Inc., a possible additional joint employer, consisting of workers who work primarily or completely for Sampson, and probably qualify as its employees under the factors delineated by the Department of Labor, the Internal Revenue Service, and under the Common Law, especially considering that when the predominantly Hispanic workers approach Sampson to become employed, they are given Barnett Management employment applications and are made to appear to be hired through Barnett Management even though the work they perform is for Sampson, so as if to prevent those workers from appearing on the payroll of Sampson.

23. Edenfield has fulfilled all conditions precedent to the filing of this lawsuit and/or such conditions have been waived.

## STATEMENT OF FACTS

24. In or around July, 2014, Edenfield was employed by Defendants to perform various duties and assist in the operations of the company office.

25. Prior to that, Edenfield was employed by Sampson in other capacities for Sampson.

26. When originally hired in 2012, Edenfield was listed as an employee of Sampson. At some point in time, Mr. Sampson decided that Edenfield would become listed as an employee of Traditional Lawn & Tree Service, Co., LLC, a company he also owned and controlled and used to provide employee benefits to some, but not all of his employees, so that group medical insurance and other benefits could be made available to Edenfield, partially or completely at her expense. Once it was determined that those benefits were to be discontinued, Edenfield's formal employment was improperly transferred back to Sampson. As a result, Edenfield lost those employee benefits, the value of which should be added to her hourly rate to determine her true regular and overtime rates.

27. Throughout her employment with Sampson, Edenfield performed her job in an exemplary manner as a dedicated, loyal, hard-working employee.

28. When Edenfield was hired, she was informed that she would be paid based on an hourly rate basis and, in fact, she was paid on an hourly basis.

29. Throughout the years she worked for Defendants, her hourly rate increased from around $16 per hour to $19 per hour.

## Hours Worked Each Week

30. Mr. Sampson made it known that he did not want to pay and would not pay overtime.

31. Up until the time she was fired, and for most, if not all, of the time she spent working for Sampson as Office Manager, Edenfield was required to work off the clock, for which she was not paid, for example, without exclusion:

   A. every morning, Edenfield was required to retrieve mail from both Sampson's P.O. Box at the Post Office and the mail kiosk located near (but not at) the Sampson office and deliver it immediately upon arrival personally to Mr. Sampson;

   B. every evening, Edenfield was required to drop off mail and packages at the mail kiosk located near (but not at) the Sampson office;

   C. three to five times a week, Edenfield was required to make a bank run and deliver Sampson bank deposits to the bank after hours;

   D. Edenfield was required to purchase materials for Sampson, including but not limited to, grease for equipment and the like;

   E. Edenfield was required to run personal errands for purchase materials for Sampson;

   F. Edenfield was required to house sit for Mr. Sampson at his personal residence on occasions when he was out of town;

  G. Edenfield was required to drop off and mail packages for Mr. Sampson, such as for his drones;

  H. Edenfield was sometimes required to stay after hours, after she had clocked out and Mr. Sampson knew she had clocked out, to respond to demands he made of her related to business matters, so that she could perform work for which Sampson wouldn't have to pay because her time spent working wouldn't appear on her time reports;

  I. Inquiry is being made as to whether time worked and actually entered by Edenfield was shaven to cause Edenfield to not be paid for all hours recorded, especially after payroll was being performed in-house;

  J. There were a number of Saturdays where Edenfield worked and was not paid;

  K. Among other matters.

### Payment Due for Work

32. Edenfield was not paid for time worked off the clock.

33. The amount of time spent working off the clock approximated around one hour per day or more each week. In addition, there was time worked by Edenfield off the clock less-than-weekly for which no payment was made.

### Payments Owed

34. Edenfield is owed for all time worked off the clock.

35. The time worked off the clock amounting to 40 hours or less, should have been paid at the regular rate then applicable ("Regular Wages Due"); the time worked off the clock in excess of 40 hours or more, should have been paid at the overtime rate then applicable (the "Overtime Wages Due").

36. Defendants knew or should have known of Edenfield's uncompensated overtime work. An employer exercising reasonable diligence would have gained knowledge that its employees

6

were not being compensated at the rate of one and a half times the regular rate for those hours that were worked in excess of forty (40) per week, as required by the FLSA.

37. Defendants failed to pay Edenfield the Overtime Wages Due to which she was entitled knowingly and intentionally or without regard so as to warrant the extension of the FLSA statute of limitations to three years.

38. Edenfield is entitled to Liquidated Damages from Defendants in an amount double the Overtime Wages Due.

39. Defendants violated Title 29 U.S.C. §207 in that, among other reasons:

   A. Edenfield worked in excess of forty (40) hours per week, but was not compensated at a rate of one and a half times her respective regular rate of pay for those hours worked by Edenfield in excess of forty (40) per work week as provided by the FLSA;

   B. Defendants have failed to maintain proper time records as mandated by the FLSA; and

   C. Defendants failed to post the required FLSA notices, and, consequently, the statute of limitations should be equitably tolled to allow Edenfield to make her claim for all wages owed during her entire period of employment.

40. Edenfield has retained Schwarzberg & Associates, P.L. to represent her in the litigation and have agreed to pay the firm reasonable attorneys' and paralegal fees for its services.

## COUNT I
## UNPAID OVERTIME COMPENSATION – VIOLATION of 29 U.S.C. § 207
## AGAINST DEFENDANTS

41. Edenfield re-alleges and re-avers the General Allegations as if fully set forth herein.

42. During Edenfield's employment with Sampson, she worked in excess of forty (40) per week in one or more weeks for which she was not compensated at the statutory rate of time and one-half.

7

43. Edenfield was entitled to be paid at the rate of time and one-half for hours worked in excess of the maximum hours provided for under the FLSA.

44. Defendants failed to pay Edenfield overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

45. Records, if any, concerning the number of hours worked by Edenfield and the actual compensation paid to her are in the possession and custody of Defendants. Edenfield intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case to set forth the precise amount due to her.

46. Defendants failed to properly disclose or apprise Edenfield of her rights under the FLSA.

47. Edenfield is entitled to an award of her reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Edenfield, respectfully request that judgment be entered in her favor against each of the Defendants, jointly and severally:

    A. Declaring that each Defendant has violated the overtime provisions of 29 U.S.C. § 207;

    B. Awarding Edenfield overtime compensation in the amount to be calculated;

    C. Awarding Edenfield liquidated damages in the amount to be calculated;

    D. Awarding Edenfield reasonable attorney's fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

    E. Alternatively, awarding Edenfield pre-judgment interest; and

    F. Ordering any other and further relief this Court deems to be just and proper.

## COUNT II

### WAGES UNDER FLA. STAT. SECTION 448.08. AGAINST SAMPSON

48. Edenfield re-alleges and incorporates the General Allegations, as if fully set forth herein.

49. Sampson owes Edenfield her wages for work performed.

50. Sampson knowingly and willfully failed to pay Edenfield her wages.

51. Edenfield is also entitled to be paid her accrued but unpaid PTO, including but not limited to any unused vacation (based on the largest amount available under any of the companies used to employ people working for any of the aforementioned companies owned and/or controlled by Mr. Sampson).

52. As a direct and proximate result of SAMPSON's failure to pay Edenfield her wages for which he is owed, Edenfield has been damaged.

53. Edenfield is entitled to an award of attorneys' fees and costs pursuant to Fla. Stat. Section 448.08 on her claim for unpaid wages.

**WHEREFORE**, Edenfield, respectfully requests that this Honorable Court enter judgment in her favor and against Sampson:

    A. Awarding her unpaid wages;

    B. Awarding her reasonable attorney's fees and costs and expenses of this litigation pursuant to Fla. Stat. Section 448.08. *et. seq.*;

    C. Awarding her pre- and post-judgment interest; and

    D. Ordering any other and further relief this Court deems to be just and proper.

## JURY DEMAND

**EDENFIELD DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

SCHWARZBERG & ASSOCIATES
*Attorneys for Edenfield*
625 North Flagler Drive, Suite 600
West Palm Beach, FL 33401
Telephone:   (561) 659-3300
Facsimile:   (561) 693-4540

By:  /s/ *Steven L. Schwarzberg*
STEVEN L. SCHWARZBERG
Florida Bar No. 0306134
steve@schwarzberglaw.com
mail@schwarzberglaw.com
LISA M. KOHRING
Florida Bar No. 093781

lkohring@schwarzberglaw.com
mail@schwarzberglaw.com

10